UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE


Edward Lehane and
Marilyn Lehane

   v.                                      Civil No. 12-cv-179-PB
                                                        Opinion No. 2013 DNH 059

Wachovia Mortgage, FSB, aka
Wells Fargo Home Mortgage, a
division of Wells Fargo Bank, N.A.


**MEMORANDUM AND ORDER**

     This case arises from a loan from Wells Fargo Bank[1] to Marilyn Lehane that was secured by mortgages on properties in Westmoreland and Swanzey, New Hampshire.  Marilyn Lehane and her husband, Edward, who is a co-owner of the Westmoreland property, claim that Wells Fargo Bank was complicit in the overstatement of Marilyn's income on the loan application, approved her for the loan even though it knew she could not afford to repay it,

---

[1] Wells Fargo's full legal description is: Wells Fargo Bank, N.A., f/k/a Wells Fargo Bank Southwest, N.A., f/k/a Wachovia Mortgage, FSB.  At the time of the events that gave rise to this suit, the bank was known as Wachovia.  Although the Lehanes' mortgage broker, Bridgeview Mortgage, is named in the complaint, the plaintiffs never served Bridgeview.  Accordingly, Bridgeview is not a party to this action.

and improperly required her to provide excessive security for the loan.  The Lehanes bring state law claims for damages.  They also seek to enjoin the foreclosure of their Westmoreland property and ask this court to declare void a loan modification agreement signed by Edward Lehane in 2011.  Wells Fargo moves to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6) and argues that the plaintiffs' damages claims are preempted by the federal Home Owners' Loan Act.  12 U.S.C. § 1461-1468.  I grant the motion to dismiss plaintiffs' damages claims on 12(b)(6) grounds and therefore do not address the preemption question.  I deny the motion to the extent that it seeks dismissal of plaintiffs' claims for injunctive and declaratory relief.

## I. BACKGROUND

In 2008, Marilyn Lehane sought to refinance the mortgage on a property she owns jointly with her son, Kevin Lehane, in Swanzey, New Hampshire.  At the time Marilyn sought to refinance the Swanzey property, the couple's monthly income was $1,695, derived solely from their social security retirement benefits.  Bridgeview Mortgage, Marilyn's mortgage broker, submitted a credit application on her behalf to Wells Fargo Bank (then Wachovia), which falsely stated that Marilyn had a monthly income of $6,000.  The Lehanes allege that Bridgeview

2

purposefully misstated Marilyn's income, and that Wachovia knew or should have known that the income figure was false.  Although the Lehanes felt that the Swanzey property was sufficient collateral for the loan, the bank required Marilyn to secure the loan by also agreeing to mortgage her interest in the Westmoreland property, which she owned jointly with her husband.  Only Marilyn signed the Promissory Note.  Marilyn also signed the mortgage on the Westmoreland property as the "Borrower" and Edward signed as the "Borrower['s] Spouse[]."  The Mortgage states that by signing the mortgage, the Borrowers Spouse "encumbers, subordinates, conveys, and/or waives any and all rights, interests, or claims in the Property, including, but not limited to, homestead, dower, marital or joint-occupancy rights."  Doc. No. 12-3.

Wells Fargo approved the loan to Marilyn in January 2008.[2]  In November 2011, attorneys for Bank of America[3] contacted the

---

[2] Neither party submitted the mortgage documents relating to the Swanzey property or any documents relating to the refinancing of the mortgage on that property.  In the record are the 2008 Mortgage and Mortgage Note for the Westmoreland property, and a 2011 modification agreement that presumably relates to the mortgage on the Westmoreland property, though the parties do not state that it does, and the agreement is confusing.  It refers to a mortgage in the original principal amount of $229,500 and indicates that the deed is recorded in Book 2488, page 587.  The original principal amount of the mortgage submitted with defendant's motion to dismiss is $183,600.  The deed for the Westmoreland property is recorded at Book 2488, page 587.

3

Lehanes regarding the Westmoreland mortgage.  They asked Edward to sign a modification agreement stating that he was a borrower and mortgagor with respect to the Westmoreland property.  Attorneys for Wachovia threatened to sue him if he did not agree to sign the agreement.  On November 15, 2011, Edward signed the agreement acknowledging himself as a borrower and mortgagor.  Plaintiffs claim that he did so, however, because he feared being sued.  They also allege that Edward lacked contractual capacity due to dementia at the time of signing and that he received no consideration for signing the loan modification.

In February 2012, the Lehanes received a notice of foreclosure indicating that Wells Fargo would commence foreclosure proceedings on their Westmoreland property on April 12, 2012.  The Lehanes filed suit in New Hampshire state court on April 9, 2012.  The defendants removed the case to this court on May 10, 2012, and moved to dismiss the Lehanes' complaint on September 5, 2012.

---

[3] The pleadings do not explain Bank of America's relationship to Wells Fargo or the mortgage.  During a phone conference, the parties represented that the attorney who contacted Edward Lehane was the attorney for the title insurer.

4

## II. **STANDARD OF REVIEW**

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must make factual allegations sufficient to "state a claim for relief that is plausible on its face." See Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible when it pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678 (citations omitted).

In deciding a motion to dismiss, I employ a two-step approach. See Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011). First, I screen the complaint for statements that "merely offer legal conclusions couched as fact or threadbare recitals of the elements of a cause of action." Id. (citations, internal quotation marks, and alterations omitted). A claim consisting of little more than "allegations that merely parrot the elements of the cause of action" may be dismissed. Id. Second, I credit as true all non-conclusory factual allegations and the reasonable inferences drawn from those allegations, and then determine if the claim is plausible.

5

Id. The plausibility requirement "simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence" of illegal conduct. Twombly, 550 U.S. at 556. The "make-or-break standard" is that those allegations and inferences, taken as true, "must state a plausible, not a merely conceivable, case for relief." Sepúlveda-Villarini v. Dep't of Educ., 628 F.3d 25, 29 (1st Cir.2010); see Twombly, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level.").

### III.  ANALYSIS

In Counts I – IV, the Lehanes assert state law claims alleging fraud, conspiracy to commit fraud, violation of the New Hampshire Consumer Protection Act ("CPA"), N.H. Rev. Stat. § 358-A, and violation of the Unfair, Deceptive or Unreasonable Collection Practices Act.[4] N.H. Rev. Stat. § 358-C. The Lehanes also seek an injunction barring Wells Fargo from foreclosing on the Westmoreland property (Count V), and a declaratory judgment that the 2011 loan modification agreement is void (Count VI). I address defendant's challenge to each claim below.

---

[4] Wells Fargo also argues that each of the Lehanes' damage claims is preempted by the Home Owners' Loan Act. 12 U.S.C. § 1462-1468. Because I dismiss the claims on 12(b)(6) grounds, I do not consider the preemption issue.

## A. Fraud, Conspiracy to Commit Fraud, and Consumer Protection Act (Counts I, IV, and III)

Plaintiffs claim that Wells Fargo defrauded them by accepting Bridgeview's misrepresentations of Marilyn's income on the loan application and thereby inducing her to agree to a loan that the bank knew or should have known the Lehanes could not afford. They also claim that Wells Fargo purposefully over-secured the loan by requiring the Westmoreland property as additional collateral. Plaintiffs' conspiracy claim derives from their fraud claim. They argue that Bridgeview and Wells Fargo conspired to provide Marilyn with a loan she could not afford in contemplation of foreclosing on the Lehanes' home once Marilyn defaulted on the loan. Wells Fargo argues that plaintiffs' fraud, conspiracy, and CPA claims are time-barred because they were filed more than three years after 2008.

Plaintiffs do not contest the applicability of New Hampshire's three-year statute of limitations to each of these claims. They assert, however, that the discovery rule in N.H. Rev. Stat. Ann. § 508:4(I) tolled the statute of limitations period until February 2012, when they received notice of Wells Fargo's intent to foreclose, because "the causal relationship between the Plaintiffs' injuries (loss of equity in their home) and the acts complained of were not evident until the Defendant

7

initiated foreclosure proceedings." Doc. No. 14 ¶¶ 3-4. I disagree and conclude that plaintiffs' fraud claims are time-barred.

Although "a claim does not arise until harm is suffered," Benson v. N.H. Ins. Guar. Ass'n, 864 A.2d 359, 366 (N.H. 2004), the discovery rule "is not intended to toll the statute of limitations until the full extent of the plaintiff's injury has manifested itself." Furbush v. McKittrick, 821 A.2d 1126, 1130 N.H. 2003). Here, the facts that led to foreclosure were apparent at the time of the transaction in January 2008. The Lehanes knew or should have known that their new monthly mortgage payment was higher than their monthly payment before they refinanced, and that they would owe $860 per month, which was roughly half of their $1,695 in monthly income. Doc. No. 1-1 ¶ 6. Plaintiffs also knew or should have known that they had been injured by obligating themselves to a loan secured by the Westmoreland property that they could not possibly repay. Further, plaintiffs do not allege that their credit application was concealed from them, or that Wells Fargo deceived them as to their loan payments or interest rates. In light of these facts, "it was not necessary for the other shoe to drop, in the form of foreclosure, to put [the Lehanes] on notice that [they] had been harmed." Monzione v. U.S. Bank, N.A., Civil No. 12-CV-433-LM,

2013 WL 310013, *3-5 (D.N.H. Jan. 25, 2013). Accordingly, I dismiss plaintiffs' fraud, conspiracy, and CPA claims as time-barred.[5]

B. **Count II: Unfair, Deceptive or Unreasonable Collection Practices Act ("UDUCPA")**

Plaintiffs claim that Wells Fargo engaged in unfair debt collection practices in violation of N.H. Rev. Stat. Ann. § 358-C:2 by "attempting to foreclose on Plaintiffs' property through

---

[5] The general statute of limitations period in N.H. Rev. Stat. Ann. § 508:4(I) applies to the CPA claim. The defendant cites both the general statute of limitations, N.H. Rev. Stat. Ann. § 508:4(I), and the exemption provision in the New Hampshire Consumer Protection Act, N.H. Rev. Stat. Ann. § 358-A:3(IV-a), to support its argument that this claim is time-barred. Doc. No. 12-1 at 7. The plaintiffs take no position on which statute applies. I apply the general three-year limitations period because § 358-A:3(IV-a) is not a statute of limitations. See N.H. Rev. Stat. Ann. § 358-A:3(IV-a). Rather, § 358-A:3(IV-a) exempts from the CPA any claim involving a transaction that occurred more than three years before the date on which the plaintiff knew or should have known of its wrongful nature. See id. (stating that "[t]ransactions entered into more than 3 years prior to the time the plaintiff knew, or reasonably should have known, of the conduct alleged to be in violation of the chapter" are exempted from the CPA); Forrester Envtl. Servs., Inc. v. Wheelabrator Techs., Inc., Civil No. 10-CV-154-JL, 2011 WL 6300536, *8 n.10 (D.N.H. Dec. 16, 2011) (concluding that § 358-A:3(IV-a) is not a statute of limitations). But see King v. Philip Morris, No. 99-C-856, 2000 WL 34016358, *12-13 (N.H. Sup. Ct. Nov. 2, 2000) (examining the statute's legislative history and reaching the opposite conclusion). In this case, the Lehanes were aware or should have been aware of the defendant's allegedly wrongful conduct on the same day they signed the refinancing agreement. Because no time elapsed between the date of the wrongful conduct and the date on which plaintiffs' should have known the conduct was wrongful, § 358-A:3(IV-a) does not exempt the Lehanes' claim from the CPA.

means of a loan originating in fraud, duress, and undue influence and misrepresentation." Doc. No. 1-1. ¶ 21. They also claim, without any elaboration or explanation, that Wells Fargo's ability to foreclose on the property was "enhanced" by requiring Edward Lehane, under threat of suit, to concede in 2011 that he was a borrower. Id.

Wells Fargo argues that the Lehanes failed to identify any unfair or deceptive practice that violated the New Hampshire UDUCPA.[6] In order to state a viable claim for relief under the New Hampshire UDUCPA, a plaintiff must allege, among other things, that "the defendant has engaged in a prohibited act or has failed to perform a requirement imposed by the [Act]".

---

[6] Wells Fargo also argues that foreclosure is not debt collection activity subject to the UDUCPA. In support of this argument, Wells Fargo cites Beadle v. Haughey, No. Civ. 04-272-SM, 2005 WL 300060 (D.N.H. 2005), in which this court noted that "[n]early every court that has addressed the question has held that foreclosing on a mortgage is not debt collection activity for purposes of the" federal Fair Debt Collection Practices Act. Id. at *3. Plaintiffs assert the contrary position: that foreclosure is debt collection activity. See Glazer v. Chase Home Finance LLC, 704 F.3d 453, 461 (6th Cir. 2013) (holding that "mortgage foreclosure is debt collection under the FDCPA" and finding support in cases from the Third and Fourth Circuits). The New Hampshire Supreme Court, however, has not spoken on whether foreclosure constitutes debt collection under the New Hampshire UDUCPA, and this court stated just last year that it "remains agnostic as to whether a foreclosure itself constitutes debt collection." LeDoux v. JP Morgan Chase, N.A., Civil No. 12-CV-260-JL, 2012 WL 5874314, *8 n.9 (D.N.H. Nov. 20, 2012). Because the law is unclear and the plaintiffs' claim is properly dismissed on other grounds, I decline to decide this issue.

Moore v. Mortg. Elec. Registration Sys., 848 F. Supp. 2d 107, 124 (D.N.H. 2012) (citations and quotations omitted).  The list of deceptive practices provided in § 358-C:3 includes conduct that relates to methods by which a creditor might seek to collect a debt.  For example, it prohibits debt collectors from engaging in certain types of communications (i.e. repeated phone calls, the use of profanity, or the use of obscene or vulgar language), threatening to use force or violence against debtors, threatening to reveal the existence of a debt to a third party, or making material misrepresentations about the size of a debt.  See N.H. Rev. Stat. § 358-C:3.  Here, the plaintiffs object to the means by which they became indebted to Wells Fargo: the allegedly fraudulent origination of the mortgage loan in 2008 and the alleged coercion of Mr. Lehane into signing the promissory note in 2011.  They make no attempt to identify a deceptive act that the UDUCPA prohibits, and I am unable to discern which category of deceptive or unreasonable debt collection practices in § 358-C:3 might plausibly encompass Wells Fargo's alleged actions.  Thus, the Lehanes have failed to establish that defendants' conduct is a prohibited deceptive practice for purposes of the statute.  Accordingly, I dismiss Count II for failure to state a claim.

**C.   Count V: Injunctive Relief**

Plaintiffs ask the court to enjoin foreclosure on their Westmoreland property, arguing that the mortgage loan was obtained through fraud.  Wells Fargo does not provide a distinct basis for objecting to this claim, but states in its motion that plaintiffs failed to allege facts showing that the bank knew or should have known that their income was misstated on the credit application.  Doc. No. 12-1 at 8.  Although fraud must be pled with particularity, knowledge "may be averred generally." Hayduk v. Lanna, 775 F.2d 441, 443 (1st Cir. 1985) (quoting Fed. R. Civ. P. 9(b)).  Here, plaintiffs have pled defendant's knowledge of the income overstatement with minimal sufficiency, and the defendant offers no other basis for dismissal.  I deny the motion to dismiss plaintiffs' claim for injunctive relief but express no views about the sufficiency of the claim otherwise.

**D.   Count VI: Declaratory Relief**

Plaintiffs also claim that Wells Fargo coerced Edward in 2011 into signing the loan modification agreement, although he lacked contractual capacity at the time and received no consideration in exchange for signing the agreement.  The defendant objects to this claim in a conclusory manner without offering a legal basis for dismissal.  I therefore deny the

12

motion to dismiss this count.

### IV.  CONCLUSION

For the foregoing reasons, I grant the defendant's motion to dismiss in part and deny it in part.  Doc. No. 12.  Counts I-IV are dismissed and the motion is otherwise denied.

SO ORDERED.

>   /s/Paul Barbadoro
>   Paul Barbadoro
>   United States District Judge

April 16, 2013

cc:   Joseph S. Hoppock, Esq.
      Brian I. Michaelis, Esq.
      David M. Bizar, Esq.